**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-2082**

───────────

ANNE ARUNDEL COUNTY, MARYLAND,

Plaintiff – Appellee,

v.

BP P.L.C.; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.;
CROWN CENTRAL LLC; CROWN CENTRAL NEW HOLDINGS LLC;
ROSEMORE, INC.; CHEVRON CORP.; CHEVRON U.S.A. INC.; EXXON
MOBIL CORP.; EXXONMOBIL OIL CORPORATION; AMERICAN
PETROLEUM INSTITUTE; SHELL PLC, f/k/a Royal Dutch Shell plc; SHELL
USA, INC., f/k/a Shell Oil Company; CITGO PETROLEUM CORP.;
CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; PHILLIPS
66 COMPANY; MARATHON OIL COMPANY; MARATHON OIL
CORPORATION; MARATHON PETROLEUM CORPORATION; SPEEDWAY
LLC; HESS CORP.; CNX RESOURCES CORPORATION; CONSOL ENERGY,
INC.; CONSOL MARINE TERMINALS LLC,

Defendants – Appellants.

───────────

**No. 22-2101**

───────────

CITY OF ANNAPOLIS, MARYLAND,

Plaintiff – Appellee,

v.

BP P.L.C.; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.;
CROWN CENTRAL LLC; CROWN CENTRAL NEW HOLDINGS LLC;
CHEVRON CORP.; CHEVRON U.S.A. INC.; EXXON MOBIL CORP.;

EXXONMOBIL OIL CORPORATION; SHELL PLC, f/k/a/ Royal Dutch Shell plc; SHELL USA, INC., f/k/a Shell Oil Company; CITGO PETROLEUM CORPORATION; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; PHILLIPS 66 COMPANY; MARATHON OIL COMPANY; MARATHON OIL CORPORATION; MARATHON PETROLEUM CORPORATION; SPEEDWAY LLC; HESS CORPORATION; CNX RESOURCES CORPORATION; CONSOL ENERGY, INCORPORATED; CONSOL MARINE TERMINALS LLC; AMERICAN PETROLEUM INSTITUTE; ROSEMORE, INC.,

Defendants – Appellants.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:21-cv-01323-SAG; 1:21-cv-00772-SAG)

---

Argued: December 6, 2023                    Decided: February 26, 2024

---

Before WYNN, THACKER, and HEYTENS, Circuit Judges.

---

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Wynn and Judge Thacker joined.

---

**ARGUED:** Kannon K. Shanmugam, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP, Washington, D.C., for Appellants. Victor Marc Sher, SHER EDLING LLP, San Francisco, California, for Appellees. **ON BRIEF:** Thomas G. Hungar, Washington, D.C., Andrea E. Neuman, New York, New York, Joshua D. Dick, San Francisco, California, Theodore J. Boutrous, Jr., William E. Thomson, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, California; Ty Kelly Cronin, Alison C. Schurick, Kyle S. Kushner, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ P.C., Baltimore, Maryland, for Appellants Chevron Corporation and Chevron U.S.A. Inc. David B. Hamilton, Sarah E. Meyer, Hillary V. Colonna, WOMBLE BOND DICKINSON (US) LLP, Baltimore, Maryland; Jameson R. Jones, Daniel R. Brody, BARTLIT BECK LLP, Denver, Colorado, for Appellants ConocoPhillips and ConocoPhillips Company. Matthew J. Peters, Washington, D.C., Steven M. Bauer, Margaret A. Tough, Katherine A. Rouse, LATHAM & WATKINS LLP, San Francisco, California, for Appellants Phillips 66, Phillips 66 Company, ConocoPhillips, and ConocoPhillips Company. Martha Thomsen, Megan H. Berge, Washington, D.C., J. Scott Janoe, BAKER BOTTS LLP, Houston, Texas, for Appellant Hess Corp. Brian D. Schmalzbach, Richmond, Virginia, Ava E. Lias-Booker,

Melissa O. Martinez, MCGUIREWOORDS LLP, Baltimore, Maryland, for Appellant American Petroleum Institute. David C. Frederick, Daniel S. Severson, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Appellants Shell plc and Shell USA, Inc. Tracy A. Roman, Washington, D.C., Honor R. Costello, CROWELL & MORING LLP, New York, New York, for Appellants CONSOL Energy Inc. and CONSOL Marine Terminals LLC. Noel J. Francisco, David M. Morrell, J. Benjamin Aguiñaga, Washington, D.C., David C. Kiernan, JONES DAY, San Francisco, California, for Appellant CNX Resources Corp. Thomas K. Prevas, SAUL EWING ARNSTEIN & LEHR LLP, Baltimore, Maryland, for Appellants Crown Central LLC, Crown Central New Holdings LLC, and Rosemore, Inc. Warren N. Weaver, WHITEFORD TAYLOR & PRESTON LLP, Baltimore, Maryland; Nathan P. Eimer, Pamela R. Hanebutt, Lisa S. Meyer, Chicago, Illinois, Robert E. Dunn, EIMER STAHL LLP, San Jose, California, for Appellant CITGO Petroleum Corporation. Craig A. Thompson, VENABLE LLP, Baltimore, Maryland; Theodore V. Wells, Jr., Daniel J. Toal, Yahonnes Cleary, Caitlin E. Grusauskas, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, for Appellants Exxon Mobil Corporation and ExxonMobil Oil Corporation. John B. Isbister, Jaime W. Luse, TYDINGS & ROSENBERG LLP, Baltimore, Maryland; Nancy Milburn, Diana Reiter, New York, New York, John D. Lombardo, Los Angeles, California, Jonathan W. Hughes, ARNOLD & PORTER KAYE SCHOLER LLP, San Francisco, California, for Appellants BP plc, BP America Inc., and BP Products North America Inc. Mark S. Saudek, GALLAGHER EVELIUS & JONES LLP, Baltimore, Maryland; Robert Reznick, Washington, D.C.; James Stengel, New York, New York, Catherine Y. Lui, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, California, for Appellants Marathon Oil Corporation and Marathon Oil Company. Shannon S. Broome, Ann Marie Mortimer, San Francisco, California, Shawn Patrick Regan, HUNTON ANDREWS KURTH LLP, New York, New York, for Appellants Marathon Petroleum Corporation and Speedway LLC. Matthew K. Edling, Martin D. Quiñones, SHER EDLING LLP, San Francisco, California, for Appellees. Gregory J. Swain, County Attorney, Hamilton F. Tyler, Deputy County Attorney, ANNE ARUNDEL COUNTY OFFICE OF LAW, Annapolis, Maryland, for Appellee Anne Arundel County, Maryland. D. Michael Lyles, City Attorney, Joel A. Braithwaite, Assistant City Attorney, CITY OF ANNAPOLIS OFFICE OF LAW, Annapolis, Maryland, for Appellee City of Annapolis, Maryland.

———————

TOBY HEYTENS, Circuit Judge:

The appellants in these cases display a real commitment to the maxim, "If at first you don't succeed, try, try, try again." In recent years, state and local governments have brought state-court lawsuits against energy companies, alleging they misrepresented and concealed information about their fossil fuel products in violation of state tort and consumer protection laws. The companies have sought—over and over and over—to remove the cases to federal court. By our count, that gambit has failed in at least ten cases already.[1] The eleventh time is not the charm.

## I.

Two Maryland local governments—the City of Annapolis and Anne Arundel County—filed nearly identical suits against BP P.L.C. and more than 20 other energy companies in Maryland state court. The complaints seek damages and equitable relief under Maryland's Consumer Protection Act and various state tort law causes of action based on the companies' use and promotion of fossil fuel products while "knowing,"

---

[1] *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022), cert. denied, 143 S. Ct. 1796 (2023); *Connecticut by Tong v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), cert. denied, 143 S. Ct. 2483 (2023); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), cert. denied, 143 S. Ct. 1795 (2023); *Minnesota by Ellison v. American Petrol. Inst.*, 63 F.4th 703 (8th Cir. 2023), cert denied, 2024 WL 72389 (Jan. 8, 2024); *County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), cert. denied, 143 S. Ct. 1797 (2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), cert. denied, 143 S. Ct. 1795 (2023); *City of Oakland v. BP PLC*, 2023 WL 8179286 (9th Cir. Nov. 27, 2023); *Board of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022), cert. denied, 143 S. Ct. 1795 (2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023).

"conceal[ing]," and "obscur[ing]" the connection between those products and climate change. JA 1302, ¶ 12; JA 675, ¶ 236. According to the local governments, the companies' "public deception campaigns" and "failure to pursue less hazardous alternative products available" "unduly inflated the market for fossil fuel products." JA 675, ¶ 236; JA 1345, ¶ 60. And that, the local governments say, led to "more anthropogenic greenhouse gases . . . emitted into the environment than would have been absent that conduct," which "helped bring about global warming and consequent" adverse environmental, social, and economic harms. JA 675, ¶ 236; JA 1345, ¶ 60.

Making now well-rehearsed arguments, the companies removed the suits to federal court. The district court remanded both cases to state court. In its view, this Court's decision in *Mayor & City Council of Baltimore v. BP P.L.C.* (*Baltimore*), 31 F.4th 178 (4th Cir. 2022), "govern[ed] and foreclose[d]" most of the companies' asserted grounds for removal. The district court also rejected two arguments (one a variation on a previous argument, the other new) it did not believe were precluded by *Baltimore*. The variation involved the companies' continued assertion that they are eligible for federal officer removal under 28 U.S.C. § 1442(a)(1). The new argument was that the district court had removal jurisdiction under 28 U.S.C. § 1441(a) because the local governments' claims necessarily raised First Amendment questions and thus established federal question jurisdiction under 28 U.S.C. § 1331.

## II.

"Since [the companies] relied upon the federal officer removal statute as a path to federal court, we possess appellate jurisdiction to review the entirety of the district court's

remand order under [28 U.S.C.] § 1447(d)." *Baltimore*, 31 F.4th at 197. We review de novo the district court's conclusion that it lacked subject-matter jurisdiction. See *id.*

Despite asserting four grounds for removal in their brief, the companies admit that *Baltimore* decided two of those issues against them. Under this Court's well-settled procedures, "one panel cannot overrule another." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc). We thus reject the companies' arguments that the district court had federal question jurisdiction because the local governments' claims: (a) "necessarily and exclusively arise under federal law"; or (b) "arise out of, or in connection with [the companies'] operations on the Outer Continental Shelf." BP Br. 6 (quotation marks and alterations removed).

That leaves the two removal theories addressed and rejected by the district court. We too are unpersuaded.

A.

We conclude federal officer removal was no more proper here than in *Baltimore*. See 31 F.4th at 228–38 (rejecting federal officer removal argument).

Section 1442(a)(1) of Title 28 permits the removal of any civil action brought in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." To qualify for removal under that statute, a private entity (like each of the companies sued here) must show: "(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority." *Baltimore*, 31 F.4th at 228 (quotation marks and alterations removed). We need

6

not decide whether the companies can meet the first two requirements because we conclude they cannot satisfy the third.

We begin by rejecting the companies' novel and atextual attempt to expand the scope of the relevant inquiry. Making aggressive use of ellipses, the companies assert the relevant question is whether the "'civil action . . . relat[es]'—at least in part—to the defendant's action(s) under the direction of federal officers." BP Br. 20 (quoting 28 U.S.C. § 1442(a)(1)) (alteration in original). Based on that reading of the statute, the companies contend the district court erred in focusing only on whether "the alleged tortious conduct" identified in the complaints relate to the companies' asserted federal duties or obligations. BP Br. 21. Instead, the companies say we should "focus[ ] . . . on" whether "the acts that allegedly caused the 'injuries'" for which the local governments "seek[ ] to recover" were directed by federal officers. *Id.* That is a broader class of actions than the specific "tortious conduct" the local governments challenge, and the companies say it would include their "extraction and production of fossil fuels, a substantial amount of which occurred under the direction of federal officers." *Id.* at 20–21.

But that is not what the statute says or how courts have interpreted it. The statutory text tells us what must relate to what. To qualify for removal, a defendant must show, as relevant here, that a suit is "against" "any person acting under [an] officer" "for or relating to any *act* under color of" a federal office. 28 U.S.C. § 1442(a), (a)(1) (emphasis added). It is the "act" for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty.

Our Court and the Supreme Court have described the statute in precisely that way.

7

In *Baltimore*, we said that "[t]o satisfy the third prong, the *conduct charged in the Complaint* need only relate to the asserted official authority. That is, there must be a connection or association between *the act* in question and the federal office." 31 F.4th at 233 (emphasis added) (quotation marks and citations removed). And in *Jefferson County v. Acker*, 527 U.S. 423 (1999), the Supreme Court said the statute requires a connection "between the charged *conduct* and asserted official authority." *Id.* at 431 (emphasis added).

The companies' drumbeat invocation of *County Board of Arlington County v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), does not move the needle. Yes, the words "injuries," "harm," and "damages" appear in that opinion. *Id.* at 251, 257. But the portion of the opinion the companies most often cite as support for their proposed interpretation of the relatedness requirement was not discussing the relatedness requirement at all. Instead, that part of the opinion was about the separate requirement that a private party seeking federal officer removal must show that it was "acting under" a federal officer. *Id.* at 251. And, when referencing the relatedness prong, that decision also stated that "there must be a connection or association between *the act* in question and the federal office." *Id.* at 256 (quoting *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 466 (4th Cir. 2020), vacated, 593 U.S. 230 (2021)) (emphasis added) (further quotation marks removed).

When asked about the lack of precedent to support their proposed reading of the statute, the companies asserted that no court has been squarely presented with the theory they urge here because "in most cases" the "charged conduct" and the conduct causing the "injury" are "one and the same." Oral Arg. 8:05–8:56. But we think the statutory text and

our precedent are clear: To obtain removal under Section 1442(a)(1), a defendant must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority.

Having framed the relevant inquiry, we conclude the companies failed to show any of their allegedly wrongful activities were carried out for or in relation to federal authority. The companies cite "pervasive federal control over" their operations, including: (1) "producing specialized fuels for the military"; (2) "acting under the direction of the military during World War II and the Korean War"; (3) "supplying oil to the Strategic Petroleum Reserve"; (4) "performing operations on the [Outer Continental Shelf]"; and (5) "operating the Elk Hill reserve under the control of the U.S. Navy." BP Br. 16–18. And, as compared to *Baltimore*, the companies assert the expanded factual record and broader range of presented activities here show the federal government's "plenary" control over fossil fuel production, which means those activities "necessarily relate" to the local governments' claims. Oral Arg. 14:40–14:52 (first quote); BP Br. 16 (second quote). We are not convinced.

To begin, we reject the companies' reliance on military activity in the 1940s and 1950s as a basis for federal officer removal here. The actions identified in the complaint began decades later. As the D.C. Circuit put it when rejecting a similar argument, "[t]here is simply no relationship between actions taken by the Companies' predecessors in the 1940s and 1950s and the allegedly deceptive statements made by the Companies about climate change since 1980." *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023).

The companies' remaining assertions of federal authority involve extraction of gasoline or operation of energy infrastructure, either under federal regulations or via commercial relationships with the federal government. But the claims here do not challenge the companies' production and supply of fossil fuels, whether at the Strategic Petroleum Reserve, the Elk Hills Reserve, the Outer Continental Shelf, or anywhere else. Instead, the local governments attack the companies' "widely disseminated misleading marketing materials"; attempts to "discredit the scientific knowledge generally accepted at the time" and to "advance[] pseudo-scientific theories of their own"; and "develop[ment of] public relations materials that prevented reasonable consumers from recognizing the risk that fossil fuel products would cause grave climate changes." JA 693, ¶ 267. Because the activities cited by the companies involve fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products, those activities fail to show the required relatedness.

A comparison between this case and *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017), underscores the problem with the companies' argument. In *Sawyer*, the estate of a worker who allegedly died from asbestos exposure while assembling boilers for Navy vessels sued the boilers' manufacturer based on a failure to warn about the danger of asbestos in its products. But the relevant defendant in *Sawyer* did not simply make boilers under contracts with the Navy. Instead, "the Navy *dictated the content of warnings* on" the company's boilers. *Sawyer*, 860 F.3d at 258 (emphasis added). For that reason, the manufacturer's charged conduct (a failure to warn) was directly related to the asserted official authority (choosing the contents of the warnings).

Here, by contrast, the companies do not argue the federal government required them to market or describe their products in a certain way. We thus join the First, Second, Eighth, and D.C. Circuits in holding that allegations like those here do not support federal officer removal. See *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022) ("adher[ing] to" prior "rejection of federal-officer removal jurisdiction" in *Rhode Island v. Shell Oil Products Co.*, 979 F.3d 50, 59–60 (1st Cir. 2020), vacated, 141 S. Ct. 2666 (2021)), cert. denied, 143 S. Ct. 1796 (2023); *Connecticut by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023); *Minnesota by Ellison v. American Petrol. Inst.*, 63 F.4th 703, 715–16 (8th Cir. 2023), cert. denied, 2024 WL 72389 (Jan. 8, 2024); *District of Columbia*, 89 F.4th at 156–57.

The companies also ask us to look beyond the face of the complaints, accusing the local governments of artful pleading and insisting the governments' property-based claims of trespass, public nuisance, and private nuisance necessarily rest on physical injuries from the companies' production and sale of fossil fuels. That argument, too, is foreclosed by *Baltimore*. In *Baltimore*, this Court considered a virtually identical complaint raising claims under the Maryland Consumer Protection Act and several property-based torts. The Court held that the "source of tort liability" was not any production-related activities but the defendants' "concealment and misrepresentation of [their] products' known dangers— and the simultaneous promotion of their unrestrained use." 31 F.4th at 233–34. Here, as in *Baltimore*, "each of [the local governments'] claims are factually premised on [the companies'] 'superior knowledge' of the negative, climate-change impacts attributable to

their fossil-fuel products." *Id.* at 195.[2] And, here too, we lack the authority to revisit that decision. See *McMellon*, 387 F.3d at 332.

B.

The companies also contend removal was proper because the district court would have had federal question jurisdiction over these suits under 28 U.S.C. § 1331. See 28 U.S.C. § 1441(a) (stating that, subject to exceptions not at issue here, an action may be removed if the district court would have had "original jurisdiction" had it been filed in federal court). The companies argue that no court will be able to resolve the local governments' misrepresentation claims without addressing a question of federal law: whether the First Amendment protects the companies' commercial speech or speech on matters of public concern. And that, insist the companies, means there is federal question jurisdiction under the analysis mandated by *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

The Third and Ninth Circuits swiftly disposed of this argument, and so can we. See *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 709 (3d Cir. 2022); *City of Oakland v. BP PLC*, 2023 WL 8179286, at *3 (9th Cir. Nov. 27, 2023). For *Grable* jurisdiction to

---

[2] See, *e.g.*, JA 684–85 (alleging, for public nuisance, that companies had "superior knowledge" from their control of the industry); JA 691 (alleging, for private nuisance, that companies possessed "extensive knowledge" of the hazards); JA 693, 695 (alleging, for strict liability and negligent failure to warn, that companies breached a duty of care by not passing on their internal research and instead disseminating misleading materials); JA 698 (alleging, for trespass, that companies acted contrary to "actual knowledge" their products were dangerous); JA 700–02 (alleging, for violations of Maryland's Consumer Protection Act, that companies made false and misleading statements, representations, and omissions about their fossil fuel products).

lie, it is not enough that a question of federal law is likely—or even certain—to arise in the litigation. Instead, the question is whether a disputed issue of federal law is a "necessary element of one of the [plaintiff's] well-pleaded state claims." *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019).

The companies cite no decision sustaining removal over speech-related state law causes of action. To the contrary, "[s]tate courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern" even though all such cases implicate federal constitutional issues. *City of Hoboken*, 45 F.4th at 709; see, *e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The reason is straightforward. The First Amendment issues in these cases are not necessary elements of the local governments' state-law claims: they are (constitutional) defenses. And to establish federal-question jurisdiction, "[i]t is *not* enough that federal law becomes relevant by virtue of a defense," even if it is "anticipated in the plaintiff's complaint." *Burrell*, 918 F.3d at 381 (quotation marks removed).

\*     \*     \*

Like every court of appeals to have considered a similar case, we conclude there was no valid basis for removal. The district court's remand orders are

*AFFIRMED*.